## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| TERRANCE MLECZKO and TM DEFENSE SOLUTIONS LLC, Individually and on Behalf of All Others Similarly Situated,<br><br><div align="center">Plaintiffs,</div><br><div align="center">v.</div><br>DAVID DAVIS and FREDERICK S. CROMER,<br><br><div align="center">Defendants.</div> | **Case No.**<br><br>**<u>CLASS ACTION COMPLAINT</u>**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiffs, Terrance Mleczko and TM Defense Solutions LLC ("Plaintiffs"), individually and on behalf of all others similarly situated, by Plaintiffs' undersigned attorneys, for Plaintiffs' complaint against Defendants, allege the following based upon personal knowledge as to Plaintiffs and Plaintiffs' own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiffs' attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Spirit Aviation Holdings, Inc. ("Spirit" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiffs believe that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## **NATURE OF THE ACTION**

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Spirit securities between May 28, 2025 and August 29, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Spirit is the parent company of Spirit Airlines, LLC ("Spirit Airlines"), an ultra-low-cost American airline that provides passenger air transportation services for destinations throughout the U.S., Latin America, and the Caribbean.

3.      In November 2024, Spirit's predecessor entity, Spirit Airlines, Inc. ("Former Spirit") and its subsidiaries (collectively with Former Spirit, the "Corporate Debtors") filed a voluntary petition for Chapter 11 bankruptcy protection after years of mounting losses and increased competition, among other issues.

4.      In March 2025, the Corporate Debtors satisfied the conditions precedent to consummation of a pre-arranged Chapter 11 plan of reorganization (the "Plan of Reorganization"), whereby, *inter alia*, the Corporate Debtors emerged from Chapter 11 bankruptcy protection.  In connection with the Plan of Reorganization, Former Spirit completed a corporate reorganization pursuant to which Spirit became the new parent company of the Corporate Debtors, with Former Spirit becoming a wholly owned subsidiary of Spirit and converted from a Delaware corporation to a Delaware limited liability company.

5.      In late April 2025, Spirit announced that its common stock had been approved for listing on the NYSE American ("NYSE"), with public trading to begin on April 29, 2025 under the ticker symbol "FLYY."

6.      Thereafter, at all relevant times, Defendants touted their purported plan to enhance Spirit's liquidity, financial condition, and business operations, as well as the purported positive impacts these measures were having the Company's business and financial results.  In so doing, Defendants indicated to investors and the market that Spirit's business had emerged from bankruptcy protection on improved financial footing with the requisite corporate strategy and means to operate as a publicly traded company.

7.      Throughout the Class Period, Defendants made materially false and misleading statements regarding Spirit's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Spirit was at substantial risk of being unable to meet certain of its debt and other financial obligations; (ii) Spirit was also at substantial risk of being forced to file for Chapter 11 bankruptcy protection within a mere matter of months; (iii) accordingly, Defendants had overstated enhancements to Spirit's financial condition, liquidity, and overall business and operations, while simultaneously downplaying the negative impacts of adverse market conditions on the same; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

8.      On August 11, 2025, Spirit filed a quarterly report on Form 10-Q with the SEC for the period ended June 30, 2025.  Therein, Defendants disclosed that "there is substantial doubt as to the Company's ability to continue as a going concern within 12 months[,]" citing, *inter alia*, "adverse market conditions" and "minimum liquidity covenants in the Company's

debt obligations and credit card processing agreement [that] require financial results to improve at a rate faster than what the Company is currently anticipating."

9.      On this news, Spirit's stock price fell $1.44 per share, or ***40.68%***, to close at $2.10 per share on August 12, 2025.

10.      ***That same month***, on August 29, 2025, Spirit issued a press release wherein Defendants disclosed, *inter alia*, that "the Company has filed voluntary petitions for Chapter 11 in the U.S. Bankruptcy Court for the Southern District of New York" and that "[t]he [Company's] shares are expected to be cancelled and have no value as part of Spirit's restructuring."

11.      On the next trading day, September 2, 2025, the NYSE suspended trading of Spirit's common stock.  As Spirit explained in an SEC filing on September 3, 2025, the Company had received a notice from the regulatory staff of the NYSE (the "NYSE Regulation") on September 2, 2025, wherein the NYSE Regulation notified Spirit that it "had determined to commence proceedings to delist the common stock . . . of the Company" and, accordingly, trading in Spirit's common stock "was suspended immediately on September 2, 2025."

12.      Following the foregoing disclosures and developments, Spirit's stock price fell $0.71 per share, or ***58.2%***, to close at $0.51 per share on September 3, 2025—the first day that the Company's common stock began trading on the over-the-counter ("OTC") market under the ticker symbol "FLYYQ."

13.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

16.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Spirit is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

17.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

18.     Plaintiffs, as set forth in the attached Certifications, acquired Spirit securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

19.     Defendant David Davis ("Davis") has served as Spirit's President and Chief Executive Officer at all relevant times.

20.     Defendant Frederick S. Cromer ("Cromer") has served as Spirit's Executive Vice President and Chief Financial Officer at all relevant times.

21.     Defendants Davis and Cromer are collectively referred to herein as the "Defendants."

22.     Defendants possessed the power and authority to control the contents of Spirit's SEC filings, press releases, and other market communications.  Defendants were provided with copies of Spirit's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Spirit, and their access to material information available to them but not to the public, Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  Defendants are liable for the false statements and omissions pleaded herein.

## RELEVANT NON-PARTY

23.     Spirit is a Delaware corporation with principal executive offices located at 1731 Radiant Drive, Dania Beach, Florida 33004.  Throughout the Class Period, the Company's common stock traded in an efficient market on the NYSE under the ticker symbol "FLYY," after which it began trading on the OTC market under the ticker symbol "FLYYQ."

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Spirit is the parent company of Spirit Airlines, an ultra-low-cost American airline that provides passenger air transportation services for destinations throughout the U.S., Latin America, and the Caribbean.

25.     On November 18, 2024, as a result of, *inter alia*, years of mounting losses and increased competition, Former Spirit, and subsequently on November 25, 2024, its subsidiaries,

filed a voluntary petition for relief under Chapter 11 of Title 11 of the U.S. Code in the U.S. Bankruptcy Court of the Southern District of New York.

26.     On March 12, 2025, the Corporate Debtors satisfied the conditions precedent to consummation of a pre-arranged Plan of Reorganization and emerged from Chapter 11 bankruptcy protection.  In connection with the foregoing, Former Spirit completed a corporate reorganization pursuant to which Spirit became the new parent company of the Corporate Debtors, with Former Spirit becoming a wholly owned subsidiary of Spirit and converted from a Delaware corporation to a Delaware limited liability company.

27.     On April 29, 2025, Spirit's common stock began publicly trading on the NYSE under the ticker symbol "FLYY."

28.     Thereafter, at all relevant times, Defendants touted their purported plan to enhance Spirit's liquidity, financial condition, and business operations, as well as the purported positive impacts these measures were having the Company's business and financial results.  In so doing, Defendants indicated to investors and the market that Spirit's business had emerged from bankruptcy protection on improved financial footing, with the requisite corporate strategy and means to operate as a publicly traded company.

### Materially False and Misleading Statements Issued During the Class Period

29.     The Class Period begins on May 28, 2025, the day after Spirit issued a press release during after-market hours announcing its receipt of a delinquency notice from the NYSE for its failure to timely file its quarterly report on Form 10-Q with the SEC for the period ended March 31, 2025 (the "Q1 2025 10-Q").  The press release assured investors, in relevant part, that "[t]he Company continues to develop and implement the changes to its business necessary to return to profitability."

30.     The same press release also quoted Defendant Davis as stating[1]:

While there's lots to do, ***I'm pleased with our progress in driving change to our fleet, our product and our market positioning***.  The Spirit team has faced down tough challenges before, and I'm gratified to see such a strong focus and commitment[.]

31.     On May 30, 2025, Spirit filed its Q1 2025 10-Q with the SEC.  With respect to

Spirit's purported ability to continue as a going concern, the Q1 2025 10-Q stated, in relevant

part:

Management has assessed the impact of the current pricing environment on its liquidity requirements over the next 12 months. Based on such evaluation, ***we have concluded that it is probable we will have sufficient liquidity to meet our future cash needs with cash and cash equivalents, cash flows from operations, and management's current plans***, including the implementation of network and product enhancements, including to our Go Comfy travel option, the execution of planned sale leaseback transactions related to certain of our owned spare engines, ***and the renegotiation of terms with our credit card processor and/or other parties to facilitate payment processing***.

* * *

***Our condensed consolidated financial statements have been prepared assuming that we will continue to operate as a going concern, which contemplates the continuity of operations, realization of assets and liquidation of liabilities in the normal course of business***, and does not include any adjustments to reflect the possible future effects on the recoverability and classification of assets or the amounts and classifications of liabilities that may result from uncertainty related to our ability to continue as a going concern.

32.     Likewise, the Q1 2025 10-Q touted that "***[w]e have implemented and continue to implement plans to improve our liquidity***, including the implementation of network and product enhancements, including to our Go Comfy travel option, the execution of planned sale leaseback transactions related to certain of our owned spare engines, ***and the renegotiation of terms with***

---

[1]All emphases herein are added unless otherwise indicated.

***our credit card processor and/or other parties to facilitate payment processing***, and enhancements to our Go Comfy travel option."

33.     The Q1 2025 10-Q also made various other representations regarding Defendants' strategy to purportedly enhance the Company's liquidity and set a foundation for its future success, stating, *inter alia*, that "we implemented several strategic changes aimed at driving higher unit revenues and improving profitability" and have "decided to reduce our capacity and re-align our network to enhance operational reliability, focusing on markets where industry capacity and demand are better aligned."

34.     Further, the Q1 2025 10-Q touted that "[o]ur cost structure has consistently been among the lowest in the U.S. airline industry, which is one of our key competitive advantages" and "has allowed us to offer low fares, drive traffic volume, increase market share and protect profitability."

35.     Appended as exhibits to the Q1 2025 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein Defendants certified that the Q1 2025 10-Q "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report"; and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

36.     The statements referenced in ¶¶ 29-35 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically,

Defendants made false and/or misleading statements and/or failed to disclose that: (i) Spirit was at substantial risk of being unable to meet certain of its debt and other financial obligations; (ii) Spirit was also at substantial risk of being forced to file for Chapter 11 bankruptcy protection within a mere matter of months; (iii) accordingly, Defendants had overstated enhancements to Spirit's financial condition, liquidity, and overall business and operations, while simultaneously downplaying the negative impacts of adverse market conditions on the same; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

### The Truth Emerges

37.    On August 11, 2025, during after-market hours, Spirit filed a quarterly report on Form 10-Q with the SEC for the period ended June 30, 2025 (the "Q2 2025 10-Q"), in which Defendants disclosed that "there is substantial doubt as to the Company's ability to continue as a going concern within 12 months[.]"  In particular, the Q2 2025 10-Q stated, in relevant part:

> ***[T]he Company has continued to be affected by adverse market conditions, including elevated domestic capacity and continued weak demand for domestic leisure travel in the second quarter of 2025, resulting in a challenging pricing environment.*** As a result, the Company continues to experience challenges and uncertainties in its business operations and expects these trends to continue for at least the remainder of 2025.
>
> The Company has already taken certain measures to address these challenges, including the implementation of network and product enhancements, including its Premium Economy travel option, consummation of sale-leaseback transactions related to certain of its owned spare engines, and other discretionary cost reduction strategies, including the pilot furloughs announced in July 2025. ***After considering the measures taken, minimum liquidity covenants in the Company's debt obligations and credit card processing agreement require financial results to improve at a rate faster than what the Company is currently anticipating.*** As a result, the Company plans to take additional liquidity enhancing measures, which may include the sale or other monetization of certain aircraft and real estate, the sale of excess airport gate capacity, elimination of certain fixed costs and other transactions to raise additional liquidity. The Company is in discussions with various stakeholders related to some of these future initiatives. The Company is also in discussions with representatives of its credit card processor, which has requested additional collateral to renew its credit card processing agreement, which

expires on December 31, 2025. The level of collateral required to be posted could result in a material reduction of unrestricted cash. While it is the Company's goal to execute on these initiatives, there can be no assurance that such initiatives will be successful.

***If these initiatives are unsuccessful, management believes it is probable that the Company will be unable to comply with the minimum liquidity covenants under the Company's debt obligations and credit card processing agreement at some point in the next 12 months, which would result in an event of default*** (in the case of the Exit Revolving Credit Facility, if there are amounts drawn and outstanding under the Exit Revolving Credit Facility at that time), which could cause the maturity of the Company's debt obligations to be accelerated. ***Because of the uncertainty of successfully completing the initiatives to comply with the minimum liquidity covenants and of the outcome of discussions with Company stakeholders, management has concluded there is substantial doubt as to the Company's ability to continue as a going concern within 12 months from the date these financial statements are issued.***

38.    Following the filing of the Q2 2025 10-Q, Spirit's stock price fell $1.44 per share, or ***40.68%***, to close at $2.10 per share on August 12, 2025.

39.    ***That same month***, on August 29, 2025, during after-market hours, Spirit issued a press release revealing that it had filed for Chapter 11 bankruptcy protection, stating, in relevant part:

Spirit . . . is executing a comprehensive restructuring of the airline to position the business for long-term success. ***To facilitate the process, the Company has filed voluntary petitions for Chapter 11 in the U.S. Bankruptcy Court for the Southern District of New York*** (the "Court").

***Spirit intends to use the Chapter 11 process to implement the broad changes necessary to transition the Company for a sustainable future*** and position it to deliver the best value in the sky for years to come. The Company has been actively engaged with certain of its largest lessors, secured noteholders and key stakeholders over the past few months as it works to refine its path forward. ***The Chapter 11 process will provide Spirit the tools, time and flexibility to continue ongoing discussions with all of its lessors, financial creditors and other parties to implement a financial and operational transformation of the Company.*** The Company is also working productively with its secured noteholders, including with respect to potential financing that may become necessary later in the proceedings.

40.     The same press release quoted Defendant Davis as stating, in relevant part:

Since emerging from our previous restructuring, which was targeted exclusively on reducing Spirit's funded debt and raising equity capital, ***it has become clear that there is much more work to be done*** and many more tools are available to best position Spirit for the future . . . . ***After thoroughly evaluating our options and considering recent events and the market pressures facing our industry, our Board of Directors decided that a court-supervised process is the best path forward to make the changes needed to ensure our long-term success.*** We have evaluated every corner of our business and are proceeding with a comprehensive approach ***in which we will be far more strategic about our fleet, markets and opportunities*** in order to best serve our Guests, Team Members and other stakeholders.

41.     On the next trading day, September 2, 2025, the NYSE suspended trading of

Spirit's common stock.  As Spirit explained in an SEC filing on September 3, 2025:

On September 2, 2025, Spirit . . . received a notice from the staff of [the NYSE Regulation] that it ***had determined to commence proceedings to delist the common stock, par value $0.0001, of the Company (the "Common Stock") from [the] NYSE . . . and that trading in the Common Stock was suspended immediately on September 2, 2025***. NYSE Regulation reached its decision that the Company is no longer suitable for listing pursuant to Section 1003(c)(iii) of the NYSE American Company Guide after the Company disclosed in its August 29, 2025 Current Report on Form 8-K that the Company filed a voluntary petition for reorganization under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "Chapter 11 Case") on August 29, 2025.

***NYSE American will apply to the [SEC] to delist the Common Stock upon completion of applicable procedures. The Company does not intend to appeal the determination and, therefore, it is expected that the Common Stock will be delisted from NYSE American***. As a result of the suspension and expected delisting, the Common Stock is expected to commence trading in the OTC market. ***The OTC market is a significantly more limited market than NYSE American, and quotation on the OTC market likely results in a less liquid market for existing and potential holders of the Common Stock to trade in the Common Stock and could further depress the trading price of the Common Stock.*** The Company can provide no assurance that its Common Stock will continue to trade on this market, whether broker-dealers will continue to provide public quotes of the Common Stock on this market, or whether the trading volume of the Common Stock will be sufficient to provide for an efficient trading market.

42.     Following the foregoing disclosures and developments, Spirit's stock price fell $0.71 per share, or **58.2%**, to close at $0.51 per share on September 3, 2025—the first day that the Company's common stock began trading on the OTC market under the ticker symbol "FLYYQ."

43.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

<u>**Regulation S-K Items 105 and 303**</u>

44.     Throughout the Class Period, Spirit's periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations.  Specifically, Item 105 of SEC Regulation S-K, 17 CFR § 229.105 ("Item 105"), required Spirit to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain how each risk affects the [Company] or the securities being offered."  Defendants failed to disclose that Spirit was at substantial risk of being unable to meet certain of its debt and other financial obligations and, accordingly, was also at substantial risk of being forced to file for Chapter 11 bankruptcy protection within a mere matter of months.  Defendants also failed to disclose, *inter alia*, the true scope and severity of the negative impacts that adverse market conditions were having on Spirit's financial condition, liquidity, and overall business and operations.  Defendants' failure to disclose the foregoing issues violated Item 105 because these issues represented material factors that made an investment in the Company speculative or risky.

45.     For similar reasons, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Spirit to "[d]escribe any known trends or

uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose, *inter alia*, the issues described *supra* at ¶ 44 violated Item 303 because these issues represented known trends and uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

<u>SCIENTER ALLEGATIONS</u>

46.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  Indeed, given that Spirit's business had emerged from Chapter 11 bankruptcy protection and resumed public trading on a major stock exchange a mere matter of months earlier, Defendants were undoubtedly highly focused on the Company's ability to continue operating as such and avoid the need for refiling for Chapter 11 bankruptcy protection while they were disseminating the materially false and misleading statements alleged herein.  Accordingly, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

<u>PLAINTIFFS' CLASS ACTION ALLEGATIONS</u>

47.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Spirit securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of

their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

48.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Spirit securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Spirit or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

49.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

50.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

51.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Spirit;

- whether Defendants caused Spirit to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Spirit securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

52.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

53.     Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Spirit securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold Spirit securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

16

54.     Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

55.     Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

56.     Plaintiffs repeat and re-allege each and every allegation contained in ¶¶ 1-55 above as if fully set forth herein.

57.     This Count is asserted against all Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

58.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Spirit securities; and (iii) cause Plaintiffs and other members of the Class to purchase or

17

otherwise acquire Spirit securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

59.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Spirit securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Spirit's finances and business prospects.

60.     By virtue of their positions at Spirit, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants.  Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth.  In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

61.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control.  As the senior managers and/or directors of Spirit, Defendants had knowledge of the details of Spirit's internal affairs.

62.     Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, Defendants were able to and did, directly or indirectly, control the content of the statements of Spirit.  As officers and/or directors of a publicly-held company, Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Spirit's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Spirit securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Spirit's business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Spirit securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

63.     During the Class Period, Spirit securities were traded on an active and efficient market.  Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Spirit securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Spirit securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class.  The market price of Spirit securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

64.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

65.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against Defendants)

66.     Plaintiffs repeat and re-allege each and every allegation contained in ¶¶ 1-55 above as if fully set forth herein.

67.     This Count is asserted against all Defendants and is based upon Section 20(a) of the Exchange Act, 15 U.S.C. § 78t(a).

68.     During the Class Period, Defendants participated in the operation and management of Spirit, and conducted and participated, directly and indirectly, in the conduct of Spirit's business affairs.  Because of their senior positions, they knew the adverse non-public information about Spirit's misstatement of income and expenses and false financial statements.

69.     As officers and/or directors of a publicly owned company, Defendants had a duty to disseminate accurate and truthful information with respect to Spirit's financial condition and results of operations, and to correct promptly any public statements issued by Spirit which had become materially false or misleading.

70.     Because of their positions of control and authority as senior officers, Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Spirit disseminated in the marketplace during the Class Period concerning Spirit's results of operations.  Throughout the Class Period, Defendants exercised their power and authority to cause Spirit to engage in the wrongful acts complained of herein. Defendants, therefore, were "controlling persons" of Spirit within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Spirit securities.

71.     Each of the Defendants, therefore, acted as a controlling person of Spirit.  By reason of their senior management positions and/or being directors of Spirit, each of the Defendants had the power to direct the actions of, and exercised the same to cause, Spirit to engage in the unlawful acts and conduct complained of herein.  Each of Defendants exercised control over the general operations of Spirit and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

72.     By reason of the above conduct, Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Spirit.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B.     Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated: September 30, 2025                                Respectfully submitted,

**MILLER SHAH LLP**

By: */s/ Nathan C. Zipperian*
Nathan C. Zipperian
Jayne A. Goldstein
2103 N. Commerce Parkway
Ft. Lauderdale, FL 33326
Telephone: (954) 515-0123
Facsimile: (866) 300-7367
nczipperian@millershah.com
jagoldstein@millershah.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com

**BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC**
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Attorneys for Plaintiffs*

## CERTIFICATION PURSUANT
## <u>TO FEDERAL SECURITIES LAWS</u>

1.    I, _____TERRANCE MLECZKO_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.    I have reviewed a Complaint on behalf of investors in the securities of Spirit Aviation Holdings, Inc. ("Spirit") and authorize the filing of a comparable complaint on my behalf.

3.    I did not purchase or acquire Spirit securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.    I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Spirit securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.    The attached sheet lists all of my transactions in Spirit securities during the Class Period as specified in the Complaint.

6.    During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.    I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America

that the foregoing is true and correct.

**Executed** _____
September 29, 2025

**(Date)**

DocuSigned by:

TERRANCE MLECZKO

_____
68EF93D57DB04D7...

**(Signature)**

_____
TERRANCE MLECZKO

**(Type or Print Name)**

**Spirit Aviation Holdings, Inc. (FLYYQ)**                                     **Terrance Mleczko**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Account 1 | | | |
| Purchase/Acquisition | 7/9/2025 | 614 | $4.8600 |
| Purchase/Acquisition | 7/10/2025 | 4,275 | $4.8900 |
| Purchase/Acquisition | 7/14/2025 | 42,000 | $4.7800 |
| Purchase/Acquisition | 7/14/2025 | 21,141 | $4.7300 |
| Purchase/Acquisition | 7/16/2025 | 21,929 | $4.5700 |
| Purchase/Acquisition | 7/31/2025 | 1,143 | $4.1100 |
| Purchase/Acquisition | 8/1/2025 | 9,708 | $4.0100 |
| Purchase/Acquisition | 8/15/2025 | 53,191 | $1.8700 |
| Account 2 | | | |
| Purchase/Acquisition | 7/2/2025 | 6,085 | $4.8800 |

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I, Terrance Mleczko, on behalf of TM Defense Solutions LLC ("TM Defense"), as sole owner, with authority to bind TM Defense and enter into litigation on its behalf, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint on behalf of investors in the securities of Spirit Aviation Holdings, Inc. ("Spirit") and authorize the filing of a comparable complaint on behalf of TM Defense.

3.      TM Defense did not purchase or acquire Spirit securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.      TM Defense is willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Spirit securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of TM Defense's transactions in Spirit securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, TM Defense has not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      TM Defense agrees not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond its *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

**Executed** _____September 29, 2025_____
                        **(Date)**

DocuSigned by:

TERRANCE MLECZKO

68EF93D57DB04D7...
_____
                **(Signature)**

**Terrance Mleczko**
*Sole owner*
**TM Defense Solutions LLC**

**Spirit Aviation Holdings, Inc. (FLYYQ)**                                      **TM Defense Solutions LLC**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 7/11/2025 | 740 | $4.8400 |
| Purchase/Acquisition | 7/11/2025 | 8,247 | $4.8800 |
| Purchase/Acquisition | 7/11/2025 | 19,123 | $4.8000 |
| Purchase/Acquisition | 7/11/2025 | 1,753 | $4.8500 |
| Purchase/Acquisition | 7/14/2025 | 20,833 | $4.8000 |
| Purchase/Acquisition | 7/16/2025 | 4,246 | $4.6000 |
| Purchase/Acquisition | 7/31/2025 | 127 | $4.0600 |
| Purchase/Acquisition | 7/31/2025 | 13,530 | $4.0900 |
| Purchase/Acquisition | 8/1/2025 | 4,854 | $4.0200 |